**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Jon Rolland Martin,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-13-0381-PHX-ROS (JFM)

**Order and**
**Report & Recommendation On Petition**
**For Writ Of Habeas Corpus**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 21, 2013 (Doc. 1). On July 29, 2013 Respondents filed their Response (Doc. 12). Petitioner filed a Reply on September 23, 2013 (Doc. 17), and a Motion for Evidentiary Hearing on September 26, 2013 (Doc. 18). Respondents filed a Supplemental Answer and Response to Motion for Evidentiary Hearing (Doc. 20) on January 27, 2014. Petitioner filed a Supplemental Reply (Doc. 21) and Reply in Support of Motion for Evidentiary Hearing (Doc. 22) on February 18, 2014.

The Petitioner's Petition and Motion are now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals

1

summarized the factual background as follows (viewing the facts in a light favorable to the prosecution):

> After deputies from the Pinal County Sheriff's Department approached Martin's house to execute a search warrant, they called through a loudspeaker for any occupants to come outside. When nobody responded, they attempted to contact the residents by telephone, The deputies then used a key they had obtained to open the front door. As they did so, one deputy called out "sheriff's department." They then heard the sound of a shotgun being "racked," and Martin, who was inside the house, said, "I'm going to shoot the next cop who comes in that door." The deputies retreated and, after some time passed, Martin apparently came out of the house without further incident.

(Exhibit A, Mem. Dec. 4/2/09 at 2.)  (Exhibits to the Answer, Doc. 12, and Supplemental Answer, Doc. 20, are referenced herein as "Exhibit ___." Exhibits to Petitioner's Supplemental Reply, Doc. 21, are referenced herein as "Exhibit R-___.")

**B. PROCEEDINGS AT TRIAL**

Petitioner was charged with three counts of aggravated assault against a police officer, and proceeded to a jury trial, asserting the primary defense that "he had not known the men entering his house were law enforcement agents and that he was justified in threatening to use force to defend himself and his property."  (Exhibit A, Mem. Dec. 4/2/09 at 3; Petition, Doc. 1 at "152".)

The defense moved to strike various aggravating circumstances as having been untimely disclosed, and discussions were had on whether the disclosures were timely and whether the aggravating factors related to the instant case or another case against Petitioner.  The trial court ruled that the only aggravating factor to be presented to the jury would be Petitioner's being on release at the time of the offense. (Petition, Doc. 1 at "95", Minute Entry 10/29/07; Exhibit Q, R.T. 10/29/07 at 13.)  Nevertheless, the state raised the aggravating factors again after trial, defense counsel objected on timeliness grounds, and the Court ruled they could be considered.  (Exhibit X, R.T. 11/9/07 at 9, 14-15.)

During a pretrial evidentiary hearing (at which Petitioner was present), the trial

court observed that a discussion had previously been held with counsel in the hall outside chambers concerning a demonstration of a shotgun during the prosecution's opening statement.  On the record, the trial court overruled defense counsel's objection and ruled that the demonstration could be made.  (Exhibit N, R.T. 11/7/07 at 40.)

Petitioner, who testified in his own behalf, was found guilty as charged, and the jury found four of six aggravating factors presented to them, and Petitioner was sentenced to three consecutive 15 year prison sentences (45 years total).  (Exhibit T, R.T. 11/8/07 at 64 *et seq.*; Exhibit AA, Sentence.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal through counsel, arguing: (1) denial of due process and Sixth Amendment rights by permitting the use of aggravating factors previously precluded: (2) error in the exclusion of corroborative testimony; and (3) improper vouching by the trial court for a victim/witness's credibility.  (Exhibit K, Opening Brief.) The Arizona Court of Appeals rejected the first two claims, note that Petitioner had withdrawn the third, and affirmed Petitioner's convictions and sentences.  (Exhibit A, Mem. Dec. 4/2/09 at 2, 9.)

Petitioner filed a *pro per* Petition for Review by the Arizona Supreme Court (Exhibit B), arguing denial of a fair trial based on exclusion of corroborative testimony which was not harmless (*id.* at 6, 9-11), denial of an impartial jury by allowing "extrinsic" evidence in the form of allowing a witness to "pump" a shotgun at trial (*id.* at 6-7), denial of impartial jury by allowing a precluded witness to testify (*id.* at 7), and an insufficient indictment resulting in error in the jury instructions concerning the level of offense (*id.* at 7-8).  The Arizona Supreme Court summarily denied review.  (Exhibit C, Order 12/4/09.)

## D.  FIRST PROCEEDINGS ON POST-CONVICTION RELIEF

Petitioner then filed a Notice of Post-Conviction Relief (Exhibit D), and counsel

1  filed a petition ("Notice to Court") (Exhibit E) arguing ineffective assistance of counsel

2  based upon failure to challenge: (1) discrepancies between the jury instructions and the

3  indictment; (2) "racking" or pumping of the shotgun during opening statements; (3)

4  Petitioner's lack of knowledge that the intruders were law enforcement personnel; and

5  (4) whether Petitioner "racked" or pumped a shotgun upon law enforcement personnel

6  entering his home.  The PCR court found that a number of the underlying substantive

7  claims were precluded because they could have been raised on direct appeal, any failure

8  by counsel to challenge witnesses based on an after action incident report[1] was not

9  ineffective because counsel had tactical reasons for not introducing the report, any

10  failure to present the incident  report was reasonable because it contradicted Petitioner's

11  testimony, and counsel elicited testimony as to both the absence of a "call out" by law

12  enforcement personnel and the absence of a pump-action shot gun in the residence.

13  (Exhibit H, Order 6/16/11.)

14      Petitioner then filed a Petition for Review by the Arizona Court of Appeals

15  (Exhibit G, Petition; Exhibit FF, Appendix), arguing: (1) the indictment was defective,

16  and the jury instructions effectively amended the indictment (*id.* at 4-5); (2) the

17  "racking" of the shotgun was improper and counsel acted unreasonably in failing to

18  challenge it (*id.* at 5-6); (3) counsel failed to use the incident report to show the absence

19  of a "call out" (*id.* at 6-7); and (4) counsel failed to effectively show the absence of a

20  pump action shot gun (*id.* at 7-8.  The Arizona Court of Appeals found the underlying

21  errors alleged in the first two claims were precluded, and that Petitioner had failed to

22

23  _____

[1] On request of the Court, Respondents have provided a copy of such report at Exhibit
HH.  It consists of 8 pages, but is labeled with the first page "Page 2 of 10," the last page
24  "Page 10 of 10," and is missing any page "1" or "5."  (The copy appended as Exhibit D
to Petitioner's Reply (Exhibit EE) in support of his first PCR petition contains an initial
25  unnumbered page titled "Operational Risk Assessment.  This page does not bear the fax
machine marks that appear on the balance of the report. The page is a form which has not
26  been completed.)  Plaintiff argues a failure to make disclosures, with related claims of
prosecutorial misconduct, ineffective assistance, etc. (*See e.g.* Supp. Reply Doc. 21 at 4-
27  5.)  Because the contents of the purportedly missing parts of the report have not been
shown or suggested to be relevant to the only claim addressed herein on the merits (part
28  3 of Ground Three), the undersigned has not pursued expanding the record further to
attempt to identify the missing parts.

show ineffective assistance of counsel.  (Exhibit H, Mem. Dec. 6/20/12.)

Petitioner filed a Motion for Reconsideration (Exhibit I), which was summarily denied (Exhibit J, Order 3/1/12).

## E.  SECOND PROCEEDINGS ON POST-CONVICTION RELIEF

On March 30, 2012, Petitioner filed a second PCR notice (Exhibit L) asserting newly discovered evidence and actual innocence based on the ineffective assistance of appellate counsel.  The PCR court summarily dismissed the proceeding, finding the claim without merit. (Exhibit M, Order 4/6/12.)

## F.  THIRD PROCEEDINGS ON POST-CONVICTION RELIEF

On May 10, 2012, Petitioner filed a third PCR notice (Exhibit O), asserting newly discovered evidence and actual innocence based on evidence withheld by the prosecution which counsel was ineffective in not subpoenaing.  The PCR court summarily dismissed the proceeding, finding that Petitioner's allegations that the evidence was presented at trial established that it was not newly discovered.  (Exhibit P, Order 5/21/12.)

## G.  REQUEST FOR UNTIMELY REVIEW

On July 6, 2012, Petitioner filed with the Arizona Supreme Court a "Request to Present Untimely Petition for Review" (Exhibit GG). That filing bore the case number for the trial court case, as well as the case numbers for his direct appeal with the Arizona Court of Appeals and the Arizona Supreme Court.  (*Compare*, Exhibit GG at 1 *with* Exhibit A, Mem. Dec. at 1 *and*  Exhibit C, Order.)

Petitioner contends that this filing was an attempt to seek review from his successive PCR petitions, and the case numbers were given as a matter of reference only. (Supp. Reply, Doc. 21 at 2.)  Respondents contend it was an attempt at reopening of the direct appeal, pointing to the case numbers utilized and Petitioner's demonstrated knowledge of how to properly caption documents seeking review in PCR proceedings as

demonstrated by his petition for review in his first PCR proceeding (Exhibit G).  (Supp. Ans., Doc. 20 at 2.)

The Arizona Supreme Court denied the request, noting the earlier denial of Petitioner's petition for review in his direct appeal, and finding that the new claims asserted must first be presented to the superior court and review sought from the Arizona Court of Appeals.  (Exhibit R-AA, Order 8/17/12.)

**H.  PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 21, 2013 (Doc. 1). [2]Petitioner's Petition asserts the following four grounds for relief:

(1) IAC re Excluded Testimony - that the trial and appellate courts erred by precluding testimony from Petitioner's sister.

(2) Impartial Jury and Presence - his Fifth, Sixth and Fourteenth Amendment rights to due process and an impartial jury were violated where: (1) he was denied the right to an impartial jury when he was excluded from a conference outside the presence of the jury concerning the "racking" of a shotgun by the prosecution during opening statements; and (2) when the prosecution presented testimony of the victim officers which contradicted and went beyond the contents of their incident report.

(3) IAC re Trial Counsel - he was denied the effective assistance of trial counsel in violation of his Sixth Amendment rights, as a result of counsel's failure to: (1) conduct an adequate investigation by interviewing 14 other witnesses; (2) failure to provide Petitioner with deposition transcripts or police reports; (3) failure to object to the shotgun demonstration; (4) failure to object to the victim officers

---

[2] Pages 51-100 of the Petition were not included in the original transmittal of the Petition, and consequently were added, out of order, as attachments 5 and 6 to the electronically filed Petition.  As a result, the pages are out of order.  References to the Petition herein reflect the page numbering used by Petitioner.

1  remaining in the courtroom during trial; and (5) failure to adequately impeach the

2  victim officers with the incident report.

3  (4) IAC re Appeal - he was denied the effective assistance of appellate counsel in

4  violation of his Sixth Amendment rights.

5  **Response** - On July 29, 2013, Respondents filed their Response ("Answer") (Doc.

6  12).  Respondents argue that Petitioner has procedurally defaulted on the claims raised in

7  Grounds One and Four and all but one part of Ground Three, the claims raised in Ground

8  Two and Four were procedurally barred, and that the exhausted portion of Ground Three

9  (concerning the ineffectiveness of counsel regarding the "racking" of the shotgun) is

10  without merit.

11  **Reply** - On September 23, 2013, Petitioner filed a Reply (Doc. 17).  Petitioner

12  argues that: (1) he fairly presented the claims in his Ground One and they are meritorious

13  (*id.* at 12-14); (2) he fairly presented the claims in his Ground Two in his first PCR

14  petition for review, and any failure to present them on direct appeal was attributable to

15  counsel (*id.* at 14-15), and the claims are meritorious (*id.* at 15-17); (3) his claims in

16  Ground Three have been fairly presented, and any deficiency in doing so was caused by

17  a denial of access to the underlying evidence to support the claims (*id.* at 17-19); and (4)

18  any failure to present his claims in Ground Four resulted from his lack of legal training

19  or appellate counsel's failures (*id.* at 19-20).  Petitioner further argues the merits of his

20  claims.  (*Id.* at 20-25.)

21  **Motion for Evidentiary Hearing** – On September 26, 2013, Petitioner filed a

22  Request for an Evidentiary Hearing (Doc. 18), arguing that he is entitled to an

23  evidentiary hearing on his claims because the state failed to conduct such a hearing.

24  Respondents argue that under 28 U.S.C. § 2254(d)(1) this Court is precluded from

25  conducting a hearing on Petitioner's exhausted claim because the claim was decided on

26  the merits. (Doc. 20 at 12.) Respondents further argue that Petitioner was not diligent in

27  pursuing an evidentiary hearing before the state courts on the claim, and thus this Court

28  cannot conduct a hearing under the limitations of 28 U.S.C. § 2254(e)(2).  (Doc. 20 at

7

13-16.)

Petitioner replies (Doc. 22) that this Court retains discretion to order an evidentiary hearing, because the facts presented by Petitioner establish his actual innocence, and the deficiencies in the state fact finding processes call for an evidentiary hearing.

**Supplemental Answer** – On January 13, 2014, the Court directed Respondents to supplement their Answer to address the merits of parts 3 and 5 of Ground 3, respond to the Motion for Evidentiary Hearing, and to provide supplements to the Record. Petitioner was given a deadline to reply. (Order 1/13/14, Doc, 19.)

On January 27, 2014, Respondents filed their Supplemental Answer and Response (Doc. 20). Respondents argue that part 5 of Ground 3 was rejected as not properly supported, and thus remains procedurally defaulted. Respondents argue parts 3 and 5 of Ground 3 are without merit.

**Supplemental Reply** – On February 18, 2014, Petitioner filed his Supplemental Reply (Doc. 21) arguing the merits and proper exhaustion of parts 3 and 5 of Ground 3. On the same date, he replied (Doc. 22) in support of his Motion for Evidentiary Hearing.

### III. APPLICATION OF LAW TO FACTS

**A. EXHAUSTION, PROCEDURAL DEFAULT AND INDEPENDENT AND ADEQUATE STATE GROUNDS**

Respondents argue that most of Petitioner's claims are either procedurally defaulted or were procedurally barred on an independent and adequate state ground, and thus are barred from federal habeas review.

**1. Exhaustion Requirement**

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been

8

codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

## 2.  Procedural Default

Ordinarily, unexhausted claims are dismissed *without prejudice*.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 12 at 7.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a

1    direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no

2    provision is made for a successive direct appeal.  Accordingly, direct appeal is no longer

3    available for review of Petitioner's unexhausted claims.

4          **Remedies by Post-Conviction Relief** – Under Arizona's waiver and timeliness

5    bars, Petitioner can no longer seek review by a subsequent PCR Petition.

6          Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a

7    claim may not ordinarily be brought in a petition for post-conviction relief that "has been

8    waived at trial, on appeal, or in any previous collateral proceeding."    Ariz.R.Crim.P.

9    32.2(a)(3).    Under this rule, some claims may be deemed waived if the State simply

10   shows "that the defendant did not raise the error at trial, on appeal, or in a previous

11   collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002)

12   (quoting   Ariz.R.Crim.P.   32.2,   Comments).    For   others   of   "sufficient   constitutional

13   magnitude," the State "must show that the defendant personally, "knowingly, voluntarily

14   and intelligently' [did] not raise' the ground or denial of a right." *Id.*  That requirement is

15   limited to those constitutional rights "that can only be waived by a defendant

16   personally." *State v. Swoopes* 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).

17   Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court

18   identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3)

19   waiver of the right to a twelve-person jury under the Arizona Constitution, as among

20   those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.[3]  Claims

21   based upon ineffective assistance of counsel are determined by looking at "the nature of

22   the right allegedly affected by counsel's ineffective performance. *Id.*

23         Here, none of Petitioner's claims are of the sort requiring a personal waiver, and

24

25         [3] Some other types of claims addressed by the Arizona Courts in resolving the
     type of waiver required include: right to be present at non-critical stages (waived by
26   omission), *Swoopes*, 216Ariz. at 403, 166 P.3d at 958; improper withdrawal of plea offer
     (waived by omission), *State v. Spinosa*, 200 Ariz. 503, 29 P.3d 278 (App. 2001); double
27   jeopardy (waived by omission), *State v. Stokes*, 2007 WL 5596552 (App. 10/16/07);
     illegal sentence (waived by omission), *State v. Brashier*, 2009 WL 794501 (App. 2009);
28   judge conflict of interest (waived by omission), *State v. Westmiller*,  2008 WL 2651659
     (App. 2008).

Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars. Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule). That time has long since passed.

Exceptions - Rules 32.2 and 32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h). *See* Ariz. R. Crim. P. 32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P. 32.4(a) (exceptions to timeliness bar). Petitioner has not asserted that any of these exceptions are applicable to his claims. Nor does it appears that such exceptions would apply. The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant

11

guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.  Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application.  Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief.  Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding.  Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court.

Thus, Petitioner has lost his opportunity to present his unexhausted claims to the Arizona courts either through direct appeal or post-conviction relief, and any of Petitioner's claims that were not fairly presented are all now procedurally defaulted.

**3.  Procedural Bar on Independent and Adequate State Grounds**

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds.  "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin*, - - - U.S. - - -, 131 S.Ct. 1120, 1127 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed

the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id.* at 584-585.

**4. Application to Petitioner's Claims**

In the instant case, Petitioner made only two forays to the Arizona appellate courts.  The first was his direct appeal, and subsequent petition for review to the Arizona Supreme Court.  The second was his petition for review to the Arizona Court of Appeals in his first PCR proceeding.  Accordingly, if Petitioner exhausted his state remedies on his habeas claims, it must have been in one of these proceedings.

**a.  Ground One –Excluded Testimony** – In his Ground One, Petitioner asserts that the trial and appellate courts erred by precluding corroborative testimony from Petitioner's sister. (Petition, Doc. 1 at 6.)   Petitioner does not make explicit the federal right he contends was violated.

Respondents argue Petitioner's state remedies on this claim have been procedurally defaulted because, although he raised a similar state law claim on direct appeal, he failed to raise it as a federal claim to the Arizona Court of Appeals or Arizona Supreme Court.  (Answer, Doc. 12 at 9.) Petitioner does not reply to this assertion, but simply argues that he presented the claim to the Arizona Court of Appeals and the Arizona Supreme Court on direct review, and that the Arizona Court of Appeals improperly rejected the claim presented by incorrectly finding a lack of prejudice. (Reply, Doc. 17 at 12-14.)

On direct appeal, Petition did raise the underlying facts to the Arizona Court of

13

Appeals.  In arguing his claim, however, he relied solely upon Arizona Rule of Evidence 801, and related state cases.  (Exhibit K, Opening Brief at 10-13.)  Petitioner offered no suggestion that the claim he was asserting was a federal one.

A claim has been fairly presented to the state's highest court if petitioner has described ***both*** the operative facts and the federal legal theory on which the claim is based.  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (emphasis added).  While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor*, 404 U.S. 270, 277-78 (1971), it is not enough that all the facts necessary to support the federal claim were before the state courts.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).

In his Petition for Review to the Arizona Supreme Court, Petitioner cited *U.S v. White*, 222 F.3d 363 (7th Cir. 2000), and argued that the jury had a right to hear corroborative testimony.  (Exhibit B, PFR at 6.)  However, *White* did not involve any constitutional claim about the exclusion of evidence.  Rather, the discussion in that case concerning the exclusion of testimony was limited to the application of Federal Rules of Evidence 403 (prejudicial effect) and 611(b) (cross-examination exceeding scope of direct).  222 F.3d at 372.  The Federal Rules of Evidence did not apply to and do not control the admission of evidence in Petitioner's state trial.  *See* Fed. R. Evid. 1(a) ("These rules apply to proceedings in United States courts."); Fed. R. Evid. 1101 (limiting application of rules to federal proceedings); 28 U.S.C. § 2072 (limiting U.S. Supreme Court's rule-making authority to district courts and courts of appeals), and *Hornbuckle v. Toombs*, 85 U.S. 648, 655 (1873) ("The acts of Congress respecting proceedings in the United States courts are concerned with, and confined to, those courts, considered as parts of the Federal system.").  Thus, Petitioner's references to *White* were insufficient to exhaust whatever federal claim his current allegations in Ground One might be construed to assert.

Petitioner's only other foray to the Arizona Court of Appeals was in his first PCR proceeding.  But there, he did not assert even the facts of the instant claim.  (*See* Exhibit

14

E, PCR Pet.)

Consequently, the undersigned concludes that Petitioner did not properly exhaust his state remedies on his Ground One, and therefore (for the reasons discussed hereinabove) those remedies are now procedurally defaulted

**b.  Ground Two  –  Due Process, Impartial Jury** – In his Ground Two, Petitioner asserts that his Fifth, Sixth and Fourteenth Amendment rights to due process and an impartial jury were violated: (1) when he was excluded from a conference outside the presence of the jury concerning the "racking" of a shotgun by the prosecution during opening statements; and (2) when the prosecution presented testimony of the victim officers which contradicted and went beyond the contents of their incident report. (Petition, Doc. 1 at 7.)  Respondents argue that this claim was presented in Petitioner's first PCR petition, but was found procedurally barred because it could have been raised on direct appeal.  (Answer, Doc. 12 at 9-10.)  Petitioner replies that he fairly presented the claims in Ground Two in his first PCR petition for review, and any failure to present them on direct appeal was attributable to counsel (Reply, Doc. 17 at 14-15), and the claims are meritorious (*id.* at 15-17).

**Shotgun Racking** – On direct appeal to the Arizona Court of Appeals, Petitioner did not assert any claim concerning the racking of the shotgun.  (Exhibit K, Opening Brief.)  In his Petition for Review to the Arizona Supreme Court, Petitioner did challenge the use of the shotgun for demonstrative purposes, citing *U.S. v. Calhoun*, 726 F.2d 162 (4th Cir. 1984)[4] for the proposition that he had been denied an impartial jury.  The Arizona Supreme Court summarily denied the petition.  (Exhibit C, Order 12/4/09.)

This presentation for the first time in Petitioner's Petition for Review was not sufficient to fairly present his claim to the Arizona courts.  The Arizona Supreme Court

---

[4] In *Calhoun*, the court reversed a civil rights conviction based on the beating death of a prisoner with a flashlight where the prosecution had banged a flashlight on the table, quoting *Berger v. United States*, 295 U.S. 78 (1935) concerning the obligation of prosecutors to seek justice.  *Berger* is the landmark case on denial of a fair trial resulting from prosecutorial misconduct.

generally will not consider issues raised for the first time before it, although it has the discretion to do so. *See Town of South Tucson v. Board of Supv'rs of Pima County*, 52 Ariz. 575, 84 P.2d 581 (1938). Raising "federal constitutional claims for the first and only time to the state's highest court on discretionary review" is not fair presentation. *Casey v. Moore*, 386 F.3d 896, 918 (9th Cir. 2004).

Then, in his first PCR petition, Petitioner again argued that the racking of the shotgun was an impermissible attempt to influence the jury through the use "of graphic demonstrations of extrinsic evidence," again citing, *inter alia*, *Calhoun*. (Exhibit E, PCR Pet. at 5.) Petitioner raised this issue both directly (*id.* at 6-7), and in a claim that trial counsel had been ineffective in failing to adequately challenge the use of the shotgun (*id.* at 7-8). (He does not, in Ground Two of the instant Petition, assert a related denial of effective assistance of counsel, though he does so in Ground 3.)

The PCR Court rejected the direct procedural challenge as procedurally barred because it "could have been raised in the Petitioner's appeal and is therefore precluded." (Exhibit H, Order 6/16/11 at 2.) The Arizona Court of Appeals upheld that conclusion, citing Ariz. R. Crim. P. 32.2(a)(3) (preclusion by failure to raise on direct appeal). (Exhibit H, Mem. Dec. 6/20/12 at 3, 4.)

Accordingly, to the extent that Petitioner intends to directly challenge the admission of the shotgun demonstration, his claim was procedurally barred by application of Arizona's preclusion bar under Ariz. R. Crim. P. 32.2(a)(3).

**Exclusion from Proceedings** – Petitioner's Ground Two also asserts an indirect challenge to the shotgun evidence, arguing that it was only admitted because he was wrongly excluded from an evidentiary hearing on the shotgun. But Petitioner did not assert any claim concerning his exclusion from proceedings in his direct appeal or in his first PCR petition for review. In his petition for review on direct appeal, he merely noted the court's ruling at the evidentiary hearing, without commenting on his presence or absence in any related proceedings. (Exhibit B, PFR at 4.)

For the reasons discussed hereinabove, the undersigned concludes that Petitioner

has now procedurally defaulted his state remedies on this claim.

**Report** – Finally, Petitioner asserts in Ground Two that the prosecution engaged in misconduct when it presented testimony of the victim officers that contradicted or went beyond the information contained in the incident report introduced by the prosecution, and omitted two pages of the report from the copy admitted at trial. Petitioner did not raise such a claim on direct appeal, either to the Arizona Court of Appeals (Exhibit K, Opening Brief) or the Arizona Supreme Court (Exhibit B, PFR).

In his first PCR petition, Petitioner argued: "Although inconsistent with the S.W.A.T. incident reports, the three victim-officers each testified that they did not ever see the Defendant in possession of a pump-action shotgun." (Exhibit E at 7.) He did so, however, only in connection with his claim of ineffective assistance of counsel. (*id.* at 7-8.) In his Petition for Review, Petitioner expanded the argument to the broad allegation that "[c]ounsel for the defendant failed effectively to impeach the testimony of the three victim/officers by failing to use the S.W.A.T. incident report which contradicts said testimony thus allowing the prosecution to use perjured testimony." (Exhibit G at 7.) As noted hereinabove, however, Petitioner's Ground Two does not assert a claim of ineffective assistance of counsel.

Nonetheless, Petitioner's petition for review went on to argue that the government failed to disclose information that could have been used to impeach the credibility of the officers, citing *U.S. v. Smith,* 77 F.3d 511 (D.C. Cir. 1996), and that the use of perjured testimony was a denial of due process, citing *White v. Ragen*, 324 U.S. 760 (1945). (Exhibit G, PFR at 7.) On the whole, however, the petition for review makes clear that Petitioner was not asserting separate claims of prosecutorial misconduct (which would have been subject to Arizona's waiver rule because they were not presented on direct appeal). Rather, the section in which this argument occurred was directed at trial counsel's failure to effectively utilize the incident report. (*Id.* at 6.) Petitioner's references to due process were simply the basis upon which he argued trial counsel could have objected to the conflicting testimony. The claim was understood as such by the

Arizona Court of Appeals, which merely addressed the related ineffective assistance claim.   (*See* Exhibit H, Mem. Dec. 6/20/12 at 4.)   Moreover, in his Motion for Reconsideration, Petitioner reiterated that "[t]he focus of the issue here should….[be]whether trial counsel was ineffective for having in his possession a report that clearly was inconsistent with the testimony of 'all three victims' and failed to impeach their testimony."  (Exhibit I, Mot. Recons. at 4.)  Petitioner did not attempt to argue that free standing claims of prosecutorial misconduct had been overlooked.

Presentation of the related claim of ineffective assistance did not fairly present the underlying claims. "While [the ineffective assistance and underlying constitutional claim are] admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts." *Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005).

Accordingly, the undersigned finds that Petitioner did not fairly present to the Arizona Court of Appeals the prosecutorial misconduct claims related to the use of perjured testimony or failure to adequately disclose the incident report.

**Summary re Ground Two** – With the exception of the portion of Ground Two challenging the admission of the shotgun demonstration, the undersigned finds the claims presented in Ground Two procedurally defaulted.   For the reasons discussed hereinabove, the undersigned concludes that Petitioner's state remedies on the claims in Ground Two are procedurally defaulted.

As to the portion of Ground Two challenging the admission of the shotgun demonstration, the undersigned concludes that the claim was procedurally barred on independent and adequate state grounds.

**c.  Ground Three – IAC of Counsel** – In Ground Three of his Petition, Petitioner argues he was denied the effective assistance of trial counsel in violation of his Sixth Amendment rights, as a result of counsel's failure to: (1) conduct an adequate investigation by interviewing 14 other witnesses; (2) failure to provide Petitioner with

deposition transcripts or police reports; (3) failure to object to the shotgun demonstration; (4) failure to object to the victim officers remaining in the courtroom during trial; and (5) failure to adequately impeach the victim officers with the incident report. (Petition, Doc. 1 at 8-8(a).)

Respondents argue that Petitioner has procedurally defaulted on the claims raised in Ground Three, except the portion (**3**) concerning the shotgun demonstration. (Answer, Doc. 12 at 10-12.)

Petitioner replies that any failure to present these claims is attributable to counsel. (Reply, Doc. 17 at 17-19.)   In his Petition, Petitioner alleged that the claims were presented to the Arizona Court of Appeals in his first PCR proceeding.

Part 3 - Indeed, Petitioner presented a series of claims on ineffective assistance to the Arizona Court of Appeals in his first PCR proceeding petition for review.   As conceded by Respondents, Petitioner argued that (**3**) counsel was ineffective for failing to adequately oppose the racking of the shot gun.  (Exhibit G, PFR at 5.)  The fact that the Arizona Court of Appeals failed to explicitly address the claim does not defeat its fair presentation.

Part 5 - Petitioner also argued that (**5**) counsel was deficient in his attempts to impeach the victim officers with the incident report. (*Id.* at 6-7.)  Respondents argue for the first time in their Supplemental Answer that the Arizona Court of Appeals rejected this claim on independent and adequate state grounds on the basis that it was not properly supported.  (Supp. Ans. Doc. 20 at 7-9.)  The Arizona Court of Appeals ruled:

> Nor does Martin adequately address the trial court's finding he had not demonstrated that counsel's conduct had fallen below prevailing professional norms and that counsel instead had made reasoned, tactical decisions. *See Gerlaugh,* 144 Ariz. at 455, 698 P.2d at 700. Although Martin claims the report counsel purportedly used for impeachment was not inconsistent with his testimony, he does not explain this assertion or provide any citation to the record supporting it. *See* Ariz. R. Crim. P. 32.9(c)(1) ("[P]etition for review shall contain specific references to the record."). Accordingly, he has waived this argument on review and we do not address it further. *See State* v. *Bolton,* 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995) (insufficient argument waives claim on review).

(Exhibit H, Mem.Dec. 6/20/12 at 4.)    Petitioner argues that the court should have provided him, as a *pro se* litigant, the opportunity to expound, that he did not have the complete report available to him, and that he supplied and referenced applicable portions of the record.  (Supp. Reply, Doc. 21 at 11-14.)

Petitioner provides no support for his contention that the Arizona Court of Appeals improperly applied its rule requiring specific citations to the record.  Petitioner cites a number of federal cases requiring that *pro se* petitioner's briefs be liberally construed.  However, Petitioner references no Arizona authority permitting a *pro se* litigant to file a brief unsupported by references to the record.  Further, even the federal courts do not excuse a *pro se* litigant's failure to support filings with specific factual allegations or references to the record.  *See e.g. Hebbe v. Pliler*, 627 F.3d 338, 341-342 (9th Cir. 2010) (reconciling liberal construction requirement with requirement for well-pleaded factual allegations).

Further, Petitioner fails to show that he did in fact comply with the requirement.  His Petition for Review made clear references to counsel's failure to use the report.  He argued that the report contradicted the victim/officers, and counsel failed to use the report or to investigate reports. (Exhibit G, PFR at 3)  He clarified the subject matter of the inconsistencies (the lack of a "call out", use of a shield, and who opened the door), including citations to his exhibits.  (*Id.* at 6-7.)  However, Petitioner proffered nothing to counter the trial court's reason for rejecting the claim, *i.e.* that the report was inconsistent with Petitioner's testimony.  At most, Petitioner provided the following in the conclusion to his Petition for Review:

> When the trial court made the statement "however, the use of this report would have contradicted the testimony of the petitioner and trial counsel was within his discretion in deciding not to use the report,["] it showed prejudice because it in no way contradicts the testimony of the defendant and based on the impeachment power of the report there is a great probability the credibility of the victim/officers conflicting statements would have resulted in the jury reaching a different verdict had counsel not been ineffective when he failed to use the report.

(*Id.* at 9-10.)  Petitioner did not reference any portion of the record to show an absence of

contradiction with his own testimony, and even failed to argue the point in anything other than the conclusory fashion that the report "in no way" contradicted his testimony.

Petitioner proffers nothing to suggest that the waiver rule applied by the Arizona Court of Appeals is not independent and adequate. Accordingly, the undersigned concludes that Petitioner's Part 5 of his Ground 3 was procedurally barred on independent and adequate state grounds.

<u>Part 1</u> - Petitioner made no assertions that counsel **(1)** failed to adequately investigate by interviewing fourteen witnesses. At most, Petitioner made a passing reference in his recitation of facts that "counsel failed to investigate any written reports from the victim/officers or any of the other officers that were involved on the day in question." (Exhibit G, PFR at 3.) However, this was a reference to reviewing reports, not a failure to interview. Moreover, Petitioner did not argue this as a separate claim. To the contrary, the whole of his petition for review reflects that this allegation was part of the *res gestae* of his explicit claim that counsel ineffectively used the incident report to impeach the victims.

<u>Parts 2 and 4</u> - Neither did Petitioner make any assertions that counsel **(2)** failed to provide transcripts or police reports to him. Nor did he make any assertions that counsel **(4)** failed to object to the victim officers remaining in the courtroom.

<u>Conclusions</u> - Accordingly, the undersigned finds that Petitioner fairly presented to the Arizona Court of Appeals in his claim in parts 3 (shotgun demonstration) of Ground Three, and thus concludes that Petitioner properly exhausted his state remedies on this claim. The undersigned concludes that Part 5 (impeachment with report) was presented to the Arizona Court of Appeals, but was procedurally barred on an independent and adequate state ground. The undersigned further finds that Petitioner did not present his claims in parts 1 (failure to interview), 2 (failure to provide transcripts etc.) and 4 (failure to object to victims in courtroom). For the reasons discussed hereinabove, the undersigned concludes that Petitioner has now procedurally defaulted his state remedies on these claims.

**d.  Ground Four  - IAC Appellate Counsel** – In Ground Four of his Petition, Petitioner argues that he was denied the effective assistance of appellate counsel in violation of his Sixth Amendment rights because counsel: (1) failed to consult with Petitioner; (2) refused to bring claims proffered by Petitioner; (3) failure to argue the absence of "call out", use of unmarked cars to show prejudice from the exclusion of corroborative testimony from Petitioner's sister.  (Petition, Doc. 1 at 9.)  Respondents argue this claim was only presented in Petitioner's second PCR petition, and is therefore procedurally defaulted.  (Answer, Doc. 12 at 12.)  In his Petition, Petitioner concedes that he did not present this issue to the Arizona Court of Appeals, and explains that the PCR court would not let him proceed with the PCR petition when he raised the claim. (*Id.*)  Petitioner further replies that any failure to present his claims in Ground Four resulted from his lack of legal training or appellate counsel's failures (Reply, Doc. 17  at 19-20).

In denying the petition for review in  Petitioner's first PCR proceeding, the Arizona Court of Appeals did note in a footnote that Petitioner had improperly raised ineffective assistance of appellate counsel in his reply brief to the PCR court, but that he did "not raise "this claim on review."  (Exhibit H, Mem. Dec. 6/20/12 at 3, n. 2.)

The undersigned finds the record reflects Petitioner's admission that he did not present this claim to the Arizona Court of Appeals.

It is true that 28 U.S.C. § 2254 only mandates the exhaustion of "available" state remedies, and Petitioner complains that the PCR court kept him from presenting this claim.  To the extent that Petitioner might intend thereby to argue that there was no remedy available, Petitioner is mistaken.

To the contrary, Petitioner presented his claims of ineffective assistance of appellate counsel to the PCR court in his second PCR notice, insofar as he argued that "ineffective assistance of appellate counsel was discovered when the Superior Court Judge Robert C. Brown ruled that issues raised by Defendant should have been raised on direct appeal and not in a rule 32."  (Exhibit L, 2nd PCR Not. at 3.)  However, the PCR

court rejected this ineffectiveness claim on the merits, finding that it had previously found that the claims underlying the alleged ineffectiveness "were without merit." (Exhibit M, Order 4/6/13 at 1.)

Even had the PCR court somehow wrongly rejected Petitioner's claim of ineffectiveness, Petitioner does not proffer anything to show that he could not have sought review of that ruling by the Arizona Court of Appeals.[5]

Moreover, the time for Petitioner to seek review by the Arizona Court of Appeals has now expired. *See* Ariz. R. Crim. P. 32.9(c) (30 days to file petition of review).

Thus, the undersigned concludes that Petitioner has procedurally defaulted his state remedies on his claims in Ground Four.

**e.   Summary Re Exhaustion** –   Based upon the foregoing, the undersigned concludes that:

(1) the following claims were procedurally barred on independent and adequate state grounds: (a) the claim in Ground Two (due process, impartial jury) challenging the admission of the shotgun demonstration; and (b) the ineffective assistance of trial counsel claim in Ground Three, part 5 based on the failure to impeach with the report;

(2) Petitioner's state remedies were properly exhausted on the following claims: (a) the ineffective assistance of trial counsel claim in Ground Three, part 3 based on the shotgun demonstration;

(3) Petitioner has procedurally defaulted his state remedies on the following claims: (a) all claims in Ground One (exclusion of corroborating testimony); (b) the claims in Ground Two (due process, impartial jury), with the exception of the claim challenging the admission of the shotgun demonstration; (c) the ineffective assistance of trial counsel claims in Ground Three, parts 1 (failure to interview), 2

_____

[5] Petitioner's claims that he was unaware he could seek such review of a dismissal of a PCR notice (as opposed to a petition) is addressed hereinafter.

(failure to provide transcripts etc.) and 4 (failure to object to victims in courtroom); and (d) the claims in Ground 4 (ineffective assistance of appellate counsel).

## B. CAUSE AND PREJUDICE

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default. *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting *Reed*, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990). The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

In Petitioner argues that this Court should find cause to excuse his procedural defaults based on: (1) as to Ground Two (due process, impartial jury), the failure of appellate counsel to raise the claims (Reply, Doc. 17 at 15); (2) further as to Ground Two, his lack of legal training (*id.*); and (3) as to Ground Three, the denial of his requests for information (*id.* at 18); and (4) as to Ground Four (IAC of appellate counsel), the PCR court's denial of his PCR petition (Petition, Doc. 1 at 9; Reply, Doc. 17 at 19).

**(1) Ineffective Assistance of Appellate Counsel** – Petitioner argues his exhaustion problems should be excused because they resulted from failures of appellate

counsel. Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default. *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998). However, a claim of ineffective assistance of counsel showing "cause" is itself subject to the exhaustion requirements. *Murray v. Carrier*, 477 U.S. 478, 492 (1986); *Edwards v. Carpenter*, 529 U.S. 446 (2000). Accordingly, "[t]o the extent that petitioner is alleging ineffective assistance of appellate counsel as cause for the default, the exhaustion doctrine requires him to first raise this ineffectiveness claim as a separate claim in state court." *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988).

As discussed hereinabove, Petitioner has procedurally defaulted on his claims of ineffective assistance of appellate counsel.  Accordingly, Petitioner may not rely upon any such ineffectiveness to excuse his failures to exhaust.

**(2) Lack of Legal Training** – Petitioner argues that he has limited legal training. However, the "cause and prejudice" standard is equally applicable to *pro se* litigants, *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990); *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986), whether literate and assisted by "jailhouse lawyers", *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988); illiterate and unaided, *Hughes*, 800 F.2d at 909, or even non-English speaking, *Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (9th Cir. 1988).

**(3) Denial of Requests for Information** –  Petitioner argues that his efforts to obtain records to support his claims have been thwarted.  As evidence of this, Petitioner points to the denial of his requests for "reports and transcripts" in his first PCR proceeding.  (Reply, Doc. 17, Exhibit R-L, Order 10/5/11), counsel's assertion that Petitioner had been provided everything available to counsel (*id.* at Exhibit R-M, Letter), the sheriff's office's rejection of a complaint concerning missing pages 1 and 5 from the incident report and the identity of the author (*id.* at Exhibit R-N), and the responses (or lack thereof) to a series of subpoenas seeking the report sent to various personnel connected with the Pinal County Sheriff's office (*id.* at Exhibits R-P, R-Q and R-R).

Petitioner fails to specify which records he was unable to obtain.  The only ones reflected in his exhibits are those related to the incident report.

Petitioner fails to specify how the lack of any records kept him from exhausting his state remedies on his procedurally defaulted claims, or resulted in the rejection of his procedurally barred claims.  The bulk of the unobtained records related to the incident report, which Petitioner addresses in his ineffective assistance of trial counsel claim in Ground Three, part 5 based on the impeachment with the report.  The undersigned has concluded, however, that this claim was procedurally barred because Petitioner failed to make specific allegations countering the PCR court's conclusion that it contradicted his own testimony, not because he was unable to produce never before introduced evidence.

Moreover, the denial of discovery by the PCR court was explained on the basis that Petitioner was seeking the records to support his petition for review following the denial of his PCR petition, and any such review would be limited to the record presented to the PCR court.  (Reply, Doc. 17, Exhibit R-L, order 10/5/11.)   At that time, Petitioner's first PCR petition had already been denied. (*See* Exhibit H, Order 6/16/11.) Petitioner proffers nothing to suggest that this ruling was incorrect.  Indeed, the Arizona courts hold that "matters in criminal cases must be reviewed and decided solely on the record made in the trial court."  *State v. Fassler*, 108 Ariz. 586, 596, 503 P.2d 807, 817 (Ariz. 1972).  Thus, it appears Petitioner would have in any event been unable to rely upon any newly obtained information in support of his petition for review, precluding his argument now that the lack of access to that information thwarted him from presenting matters to the Arizona Court of Appeals.

Thus, Petitioner fails to show cause to excuse his failure to properly exhaust, based on the unavailability of records.

**(4) Dismissal of Second and Third PCR Proceedings** -   Finally, Petitioner asserts cause to excuse his failure to exhaust his claims in Ground Four of ineffective assistance of appellate counsel by pointing to the PCR court's summary dismissal of his second and third PCR proceedings in which he alleged such ineffectiveness.   While

26

Petitioner complains of the effect of the dismissals, he does not suggest that it was in any way erroneous.  A proper, procedural dismissal of a post conviction proceeding is not the type of "interference by officials" contemplated in *Murray*. 477 U.S. at 488.  Rather, it appears the dismissal did not flow from something external to the defense, but internal, *i.e.* Petitioner's failure to properly present his claim.

To be sure, Petitioner argues that his "Request to Present Untimely Petition for Review" (Exhibit GG) was intended to seek review of those dismissals, and that he had not earlier sought review because the rules were unclear that he could seek review from a dismissal of a PCR notice, as opposed to an actual petition.  (Supp. Reply Doc. 21 at 3.)

He argues that he did not believe he could seek such review until he received the mandate dated June 15, 2012 (Exhibit R-CC) from the Arizona Court of Appeals telling him his time to seek review had expired.   (*Id.* at 2-3.) Petitioner's argument is unpersuasive.  Even if it is assumed Petitioner was ignorant of his ability to seek review in his second and third PCR proceedings, the receipt of the mandate in his first PCR proceeding would not have altered that misconception.  That mandate made no reference to those other proceedings, nor did it offer any clue to the availability of review on a dismissal of a PCR notice.  At most, it may have alerted Petitioner that he had had the right to seek review of his first PCR proceeding in the Arizona Supreme Court.  Thus, it might provide an explanation for Petitioner's failure to earlier seek review from the Arizona Supreme Court in his first PCR proceeding.  Indeed, it appears that his "Request to Present Untimely Petition for Review" (Exhibit GG) was an attempt to seek such review belatedly.

In any event, Petitioner presents no reason to believe that had he known to file a petition for review of the dismissal of his second and third PCR proceedings that proper exhaustion would have resulted.  That is, Petitioner is still left with the fact that, as determined by the PCR court, his claims in those notices were procedurally barred. Thus, any lack of clarity as to the proper manner of subsequent review was not the cause of Petitioner's failure to properly present the claims previously.

Petitioner fails to show cause based on the denial of his second and third PCR proceedings.

**Summary re Cause and Prejudice** – Based upon the foregoing, the undersigned concludes that Petitioner had failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

## C.  ACTUAL INNOCENCE AS CAUSE

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence.  *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.*, §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly limited it to claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found

28

the defendant guilty.  *Id*. at 329.  This standard is referred to as the "*Schlup* gateway." *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Here, Petitioner proffers no new evidence to show his actual innocence.  At most, he argues in support of the merits of his claims that various elements of impeachment were not exploited at trial, *e.g.* the absence of a pump action shotgun from the home and conflicts over the indicators that the intruders were law enforcement.  But Petitioner proffers nothing new to affirmatively show that he did not actually assault the victims by threatening them with a deadly weapon, or that he did not know they were law enforcement officers.

Thus, Petitioner fails to make the required showing that no reasonable juror would have found him guilty in light of new evidence not presented at trial.  Accordingly his procedurally defaulted and procedurally barred claims must be dismissed with prejudice.

**D.  MOTION FOR EVIDENTIARY HEARING**

Petitioner has requested an evidentiary hearing (Doc. 18), and the parties differ on whether an evidentiary hearing is permissible under the limitations of the AEDPA, or appropriate. (Docs. 20 and 22.)

The Court need not resolve the procedural issues, however, because Petitioner does not what additional evidence could be adduced at an evidentiary hearing that would have bearing on the sole claim subject to review on the merits, *i.e.* the claim of ineffective assistance of counsel regarding the shotgun demonstration.

Accordingly, the Motion for Evidentiary Hearing will be denied.

**E.  MERITS OF GROUND THREE,  PART 3 – IAC re SHOTGUN**

In part 3 of Ground Three of his Petition, Petitioner argues that trial counsel was ineffective for failing to adequately object to or oppose the racking of the shotgun during the prosecution's opening statement.  (Petition, Doc, 1 at 8.)  Respondents argue that the PCR court properly rejected this claim based upon counsel's pretrial objection to the

demonstration.  (Answer, Doc. 12 at 11 (citing Exhibit F at 2 and Exhibit N at 39-40.)
Petitioner did not address the merits of this claim in his Reply (*see* Doc. 17 at 17-19), but
did so in his Supplemental Reply (Doc. 21 at 9, *et seq.*)

**Claim Not Adjudicated on Merits** – Under 28 U.S.C. § 2254(d), federal habeas
relief may only be granted to a state petitioner in very narrow circumstances, e.g. where
the decision was "an unreasonable application of or contrary to" Supreme Court law, or
was "based on an unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."   28 U.S.C. § 2254(d)(1) and (2).  However,
those limitations only apply when a state petitioner's claim has been "adjudicated on the
merits." 28 U.S.C. § 2254(d)

As conceded by Respondents, Petitioner presented this claim to the Arizona Court
of Appeals in his first PCR proceeding petition for review.  (Exhibit G, PFR at 5.)
However, the Arizona Court of Appeals did explicitly not address this claim.  At most,
the court observed that the PCR court had rejected the underlying substantive challenge
to the demonstration as precluded.  (Exhibit H, Mem. Dec. 6/20/12 at 2.)  And it
concluded that Petitioner had not shown that conclusion incorrect. (*Id.* at 3.)  It did not,
however, even acknowledge the assertion of the related claim of ineffective assistance.

A federal habeas court reviews the "last reasoned decision" by a state court, and if
necessary looks through a higher court's summary decision to a lower court's reasoned
decision.  *Cannedy v. Adams*, 705 F.3d 1148, 1158 (9th Cir. 2013) (applying the rule in
tandem with *Richter* addressed hereinafter).  Ordinarily, therefore, this court would look
through the unreasoned rejection of this claim by the Arizona Court of Appeals to a
reasoned rejection by the lower, PCR court. That court, however, also failed to address
the related claim of ineffective assistance.  As noted by the reviewing court, the PCR
court had instead addressed the substantive challenge and rejected it as waived by failing
to assert it on direct appeal.  (Exhibit F, Order 6/16/11 at 2.)  (In comparison, a claim of
ineffective assistance is properly raised in the Arizona courts for the first time in a first
petition for post-conviction relief, and is not waived by failing to present it on direct

1    appeal. *See State v. Spreitz*, 202 Ariz. 1, 3, 39 P.3d 525, 527 (2002).)   At most, the PCR

2    court observed that the "that the court had authorized the State to demonstrate the

3    shotgun over defense counsel's objection." (*Id.*)   (That latter factual finding is the only

4    determination by the Arizona courts applicable to the instant claim.)

5          Respondents argue that the PCR court did address this claim when it concluded

6    that counsel had been effective.  (Supp.Ans., Doc. 20 at 6.) The PCR court addressed

7    Petitioner's claims of ineffective assistance at pages 2 and 3 of its ruling.  The court

8    detailed the claims raised, identifying them as related to: failure to use the after action

9    report; and failure to call witnesses on the lack of a pump shotgun and "call out".

10   (Exhibit F, Order 6/16/11 at 2-3.)  The court then concluded:

11               Trial counsel presented a coherent defense which was well argued
              in the face of the testimony of three law enforcement officers. His
12            tactical decisions did not fall below the standard of *Strickland v.
              Washington.* 466 U.S. 668.
13

     (Exhibit F, Order 6/16/11 at 3.)

14

15         It is true that in *Harrington v. Richter*, 131 S.Ct. 770 (2011) the Court clarified

16   that to be "adjudicated on the merits" and thus entitled to the limitations on habeas

     review of 28 U.S.C. § 2254(d), there need not be "be an opinion from the state court
17
     explaining the state court's reasoning."  131 S.Ct. at 784.  "When a federal claim has
18
     been presented to a state court and the state court has denied relief, it may be presumed
19
     that the state court adjudicated the claim on the merits in the absence of any indication or
20
     state-law procedural principles to the contrary."  *Id.* at 784-85.  That presumption is not,
21
     however, irrebuttable.  "The presumption may be overcome when there is reason to think
22
     some other explanation for the state court's decision is more likely."  *Id.* at 785.
23
           Just recently, in *Johnson v. Williams*, 133 S.Ct. 1088 (2013) (decided February
24
     20, 2013), the Court further clarified its holding in *Richter*, finding "no reason why the
25
     *Richter* presumption should not also apply when a state-court opinion addresses some
26
     but not all of a defendant's claims."  *Id.* at 1094.  Thus, the Court held:  "When a state
27
     court rejects a federal claim without expressly addressing that claim, a federal habeas
28

court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Id.* at 1096.

The Court clarified, however, that an overlooked claim has not been adjudicated on the merits. "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge." *Id.* at 1097.

Here, both the Arizona Court of Appeals and the PCR court identified specific claims of ineffective assistance by Petitioner, but excluded the instant claim from their lists.  Neither made any reference to Petitioner having asserted any other unenumerated claims of ineffective assistance.  Both courts addressed the underlying facts and claim that the racking should not have been permitted, but did so solely in reference to the waiver of the underlying claim by failing to raise in on direct appeal.

These circumstances lead "very clearly to the conclusion" that Petitioner's related claim of ineffective assistance, the instant claim, "was inadvertently overlooked in state court."  It is the experience of the undersigned that practitioners and even judges can neglect to distinguish between an underlying claim and a related claim of ineffective assistance.  This seems to be a reflexive response resulting from repeated application of the principle that failure to make or preserve futile claims cannot form the underlying basis for a claim of ineffective assistance, and thus disposing of the underlying claim commonly vitiates the related claim of ineffective assistance. *See e.g. Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996).   Of course, that principle has no application to cases, such as the instant one, where the reason for rejecting the underlying claim is the very failing of counsel that forms the heart of the claim of ineffective assistance. But old habits die hard.

Accordingly, the undersigned concludes that the instant claim was not "adjudicated on the merits" by the state courts and thus the limitations of 28 U.S.C. § 2254(d) do not apply.

**Standards for Ineffective Assistance** – Generally, claims of ineffective

assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).   In order to prevail on such a claim, petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687 88, 694.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id*. at 697.

In determining whether counsel performed deficiently, the court must focus on whether the attorney's performance was appropriate under the circumstances existing at the time, unaided by hindsight.  *See Strickland*, 466 U.S. at 690.  Moreover, there is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy.  *United States v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995).  The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices."  *United States v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).  The court need not determine the actual reason for an attorney's actions, as long as the act falls within the range of reasonable representation. *Morris v. California*, 966 F.2d 448, 456-457 (9th Cir. 1991).

**Deficient Performance** -   While the record reflects an objection by counsel to the presence of the shotgun, it does not reflect an objection based upon the prejudicial effect of the demonstration.  Respondents point to the transcript in Exhibit N.  (Answer Doc. 12 at 11.)  However, that transcript reflects no objection to the demonstration.  To the contrary, the transcript merely reflects the trial judge's report that "we had a conversation outside chambers in reference to a request from the State to allow Detective Sherwood to demonstrate the shotgun during Ms. Pierce's opening."  (Exhibit N, R.T. 11/7/07 at 39.)  The trial judge then invited defense counsel "to make any objection or record on that issue."  (*Id.*)  Counsel responded:

1
2
3
4

        MR. DIODATI: Yes, Your Honor. In addition to the shotgun, there's a bunch of SWAT equipment that's present in the courtroom that I've been told the prosecution intends to use for demonstrative purposes. And though I recognize as relevant and it clearly became relevant during their pretrial interviews during this matter, my objection is that these items were not listed in the State's pretrial statement -- its disclosure statement.

5

(*Id.*)  Thus, the sole objection raised by defense counsel was one based on a failure of

6

disclosure, not the improper influence on the jury.  The trial court then simply ruled:

7

"Show Mr. Sherwood will be able to demonstrate a shotgun."  (*Id.* at 40.)  This is

8

reflected in the PCR court's finding "that the court had authorized" the demonstration.

9

(Exhibit F, Order 6/16/11 at 2.)

10

        The federal courts have long recognized due process claims founded upon

11

prosecutors' misuse of demonstrative evidence.  For example, in *Miller v. Pate*, 386 U.S.

12

1 (1967), the Court found a denial of due process where the prosecution repeatedly

13

referred to the defendant's "bloody shorts" in a prosecution for a brutal sex attack on an

14

eight year old, where the prosecution knew the stains were paint.

15

        Respondents argue that counsel was nonetheless not deficient because there was

16

no prejudice from the shotgun demonstration because it was "not overly dramatic," and

17

counsel introduced evidence that no pump shotgun was found inside Petitioner's

18

residence.[6] (Supp. Ans. Doc. 20 at 6.)

19

        During opening statements, the prosecutor made the following references to the

20

shotgun and/or its sound:

21
22
23
24
25

        The SWAT team had obtained a key to the residence. They -- Matt Thomas will testify that they had announced who they were, they attempted to go into the home using the key, and they heard that sound. Detective -- Corporal Martinez will tell you that he made the decision to retrieve and, in fact, pulled his fellow SWAT members back from the door and they retreated.
        * * *
        The defendant placed those officers in a position where they

26
27
28

[6] Respondents further argue that the evidence at trial was "overwhelming," and thus no prejudice resulted. (Supp. Ans. Doc. 20 at 6-7.) For the reasons discussed hereinafter, the undersigned finds it difficult to cast the evidence as "overwhelming," although perhaps it might be sufficient to offset any prejudice. In any, event, this Court need not reach the prejudice issue, given the absence of a showing of deficient performance. *Strickland*, 466 U.S. at 697.

believed they were in imminent danger of physical -- serious
physical injury. You will not hear that we have the shotgun. There
was a search executed and the shotgun was not located.

(Exhibit R, R.T. 11/7/07 at 82-83.)  Presumably, it was during the reference to the sound

of the shotgun that the demonstration occurred.

The drama, or lack thereof, simply isn't reflected in the transcripts, which does

not reflect the sounds, let alone the surrounding pauses, inflections of voice, etc. - - types

of things which can create "drama."

However, this Court need not find that the demonstration was not overly dramatic.

That is because reasonable counsel would have had a tactical reason for allowing the

demonstration, *i.e.* that it emphasized the primary hole in the prosecution's case, namely

the absence of a pump action shotgun.

Defense counsel was faced with few opportunities to gain an acquittal.

Petitioner's testimony at trial was that he heard a voice outside, saw an armed man,

feared it was a drug user he had crossed or a local home invasion gang, and as the

officers entered he stood armed with a shotgun, asked who was there and getting no

response threatened to shoot whoever entered.  (Exhibit T, R.T. 11/8/07 at 66-68, 78-82.)

He represented that he did not know or believe the people entering his home were police

officers until afterward.  (*Id.* at 84, 86.)

The key factual issue, therefore, was whether Petitioner knew that the people on

the other side of his door were police officers executing a warrant versus (as he

contended) criminals out to harm him.  The prosecution attempted to establish such

knowledge by pointing to a variety of circumstances, about all of which there was

controverting testimony.

The prosecution pointed to the use of an announcement by the police prior to

entry, a "call out."  Defense counsel had admissions that some of the officers could not

recall one being given.  (Exhibit S, R.T. 11/7/7 at 80-81 (Sgt. Thomas).)  Indeed, one

officer described a call out as being given after entry, and denied recalling whether a call

out was given before they approached the home.  (Exhibit T, R.T. 11/8/7 at 32

35

(Martinez).)  Petitioner denied hearing anything other than a male voice saying "go back in your house."  (*Id.* at 78, 81.)

The prosecution pointed to the uniforms and helmets.  Petitioner testified that he did not see the clothing of the people outside his home when he peaked through the drapes and blinds, only the tops of heads and a rifle. (Exhibit T, R.T. 11/8/07 at 78-80, 89.)

The prosecution pointed to the SWAT vehicle, and defense counsel elicited testimony that the large truck used was simply painted white and was unmarked. (Exhibit S, R.T. 11/7/7 at 81-82.)  Petitioner testified that the vehicle he saw appeared to be a delivery vehicle.  (Exhibit T, R.T. 11/8/07 at 78.)

The prosecution pointed to Petitioner's reasons for expecting a visit from law enforcement (e.g. violations of probation, difficulties with neighbors, etc.).  Petitioner testified that while he may not have been surprised to be visited by the police, he did not expect a SWAT team.  (Exhibit T, R.T. 11/8/07 at 95, 107-108, 118.)

However, all of the foregoing attempts at proof depended upon the ability to show Petitioner's perception and interpretation of circumstances.  His purported statement about shooting "the next cop" did not require such inferences.  It plainly demonstrated his knowledge of the identity of those outside.  And it came directly from highly credible witnesses, the victim/officers.

Thus, the prosecution's case could be assumed to rest to a large degree on the testimony of the victim/officers that they heard Petitioner threatening to shoot "the next cop" to walk through the door. The victim/officers were committed to their story that they heard Petitioner threaten to shoot the next (or first) cop.  (Exhibit S, R.T. 11/7/07 at 100, 103 (Rankin); Exhibit T, R.T. 11/7/07 at 148 (Rankin); *Id.* at 17, 138 (Felix); *Id.* at 33, 38, 142 (Martinez).)    To counter this evidence, defense counsel needed direct evidence, evidence not dependent upon the jury weighing the relative credibility of the Petitioner (a convicted felon), to impeach the officers.  The racking of the pump action shotgun provided such impeachment.

The victim/officers were committed to their story that they heard the racking of a pump action shotgun.  (Exhibit S, R.T. 11/7/07 at 101-103 (Rankin); Exhibit T, R.T. 11/7/07 at 148 (Rankin); *Id.* at 11, 138 (Felix); *Id.* at 33 (Martinez).)  Which, of course, made no sense given the failure to locate a pump action shotgun in the house, and the recovery of a single shot shotgun.  Defense counsel elicited testimony that the single shot shotgun would not make the racking sound.  (Exhibit S, R.T. 11/7/07 at 105-106 (Det. Rankin).)  The point was sufficiently well made that the jury asked what the sound "could…be it if it wasn't a shotgun?"  (Exhibit S, R.T. 11/7/07 at 107.)

In closing, defense counsel argued:

> Ms. Pierce talked about psychology. People make mistakes. Law enforcement are just as likely to make mistakes as regular citizens are. They can't be much more tense than a belief that a gun might be pointed at you. And so you can hear things and imagine things and see things that are not there. It may not exactly be our common experience, but it has happened and it happens to all of us at some point that you are mistaken. Your senses betray you and your mind betray you and clearly that has happened here. The reason for that is you hear that noise.
> The officers testified they hear that noise, but there is no pump shotgun. Admitted into evidence is Defense Exhibit Number 34 clearly a single action shotgun that was in that closet that was retrieved ten steps away from Jon Martin when he was in his lounge chair when he thought he was going to be invaded. It doesn't make that noise. They're wrong. They're wrong.
> Now, why has the State emphasized I'm going to shoot the next cop, because this mistake pump shotgun versus single shotgun is as big as the cop. The State has absolutely positively no case unless you believe Jon Martin said I'm going to shoot the next cop that comes through that door.

(Exhibit W, R.T. 11/9/07 at 12-13.)

Thus, allowing the demonstration did not diminish Petitioner's defense.  If anything it enhanced it, driving home to the jury the prosecution's reliance upon the point about "that noise" of the shotgun.  In so doing, it increased the impeaching power of the testimony that the officers heard a shotgun being racked when the shotgun was not found.  Thus, permitting the demonstration could have been a reasonable tactical decision.

For that reason, the undersigned cannot find that counsel performed deficiently

by, and cannot find he was ineffective for, failing to object to the shotgun demonstration. Accordingly, Part 3 of Petitioner's Ground 3 is without merit, and must be denied.

### IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part

on the merits.

To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein, the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling."

To the extent that Petitioner's claims are rejected on the merits, under the reasoning set forth herein, the constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V. ORDER

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Evidentiary Hearing, filed September 26, 2013 (Doc. 18) is **DENIED**.

## VI.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that part 3 of Ground Three of the Petitioner's Petition for Writ of Habeas Corpus, filed February 21, 2013 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for Writ of Habeas Corpus, filed February 21, 2013 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that to the extent that the findings and recommendations of this Report and Recommendation are adopted, a Certificate of Appealability be **DENIED**.

## VII. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: March 10, 2014

13-0381r RR 13 12 16 on HC.docx

James F. Metcalf
United States Magistrate Judge